JON 0. NEWMAN, Circuit Judge:
This appeal raises the narrow issue whether liability for a sales tax, which is required by state law to be collected by a seller from his customers, is governed by the “excise” tax or the “trust fund” tax provisions of the Bankruptcy Code. Peter and Susan DeChiaro, the debtors, appeal from a judgment of the District Court for the Northern District of New York (Roger J. Miner, Judge) affirming a decision of the Bankruptcy Court that ruled their sales tax liability to be governed by the “trust fund” tax provision and hence not dischargeable. We affirm.
The Code provisions in question are section 507(a)(6)(C), which covers a tax “required to be collected,” commonly referred to as a “trust fund” tax, and section 507(a)(6)(E), which covers an “excise” tax.[1] A trust fund tax is always given a priority and is never subject to discharge in bankruptcy, see 11 U.S.C. §§ 507(a)(6)(C), 523(a)(1)(A); an excise tax, however, is given a priority and is not subject to discharge if the transaction underlying the tax occurred less than three years prior to the filing of the bankruptcy petition, see id. §§ 507(a)(6)(E), 523(a)(1)(A). Thus, “stale” claims for excise taxes are not entitled to a priority and are dischargeable.
This case involves a claim for stale sales taxes asserted by creditor-appellee New York State Tax Commission (the “Commission”) in bankruptcy proceedings involving the debtors. As operators of a now-defunct restaurant, the debtors were required by state law to collect a sales tax from their customers. See N.Y.Tax Law §§ 1131(1), 1132(a), 1133 (McKinney 1975). When the debtors filed their petition for relief under Chapter 13 of the Code, 11 U.S.C. §§ 1301-1330, they owed the State $12,658.99 in sales taxes on transactions that had occurred more than three years prior to the date of filing. Viewing the taxes as stale excise taxes that were subject to discharge, the debtors listed the sales taxes as an unsecured debt, not entitled to priority, on the schedule of debts filed with their bankruptcy petition. If the Bankruptcy Court accepted this characterization of the tax debt, the debtors would pay forty-four percent of the debt under the terms of their plan governing repayment of unsecured debts. The Commission, on the other hand, contending that the sales taxes were trust fund taxes, filed a proof of claim seeking priority treatment of the debt. If the Bankruptcy Court accepted that position, the debtors would be required to repay the full amount of the debt, and it would not be discharged.
Relying on its reading of legislative history and on a decision of the Seventh Circuit, In re Rosenow, 715 F.2d 277 (7th *434 Cir.1983), the Bankruptcy Court held, and the District Court agreed, that the sales taxes were trust fund taxes covered by section 507(a)(6)(C) and ordered that the debtors provide for full payment of the taxes in their Chapter 13 plan. We agree with the Bankruptcy Court’s interpretation of section 507.
Discussion
A brief review of the treatment of tax debts under the former bankruptcy Act is helpful in illuminating the intent of Congress when it enacted the Code provisions in issue in this case. Section 17a(l) of the Bankruptcy Act of 1898, ch. 541, § 17a(l), 30 Stat. 544, 550 (formerly codified as amended at 11 U.S.C. § 35(a)(1)) (repealed 1978), provided that tax debts were not released by a bankruptcy discharge.[2] Though amending the Act many times, Congress did not change this treatment until 1966, when it placed a time limitation on nondischargeability: Most tax debts more than three years old became dis-chargeable. Act of July 5, 1966, Pub.L. No. 89-496, § 2, 80 Stat. 270. However, a proviso added by the 1966 amendment identified certain tax debts that remained nondischargeable even though the tax debt was more than three years old. One such debt was a trust fund tax.[3] Act, § 17a(l)(e).
Section 17a(l)(e) excepted from discharge taxes the debtor “has collected or withheld from others.” Though this language did not expressly refer to sales taxes, it was broad enough to cover those sales taxes that a vendor has collected from his customers. Congress added the trust fund tax exception to the 1966 amendment in response to the Treasury Department’s argument that a debtor should not be relieved of his obligation for taxes he had collected from third parties but had not paid over to the taxing authority. H.R.Rep. No. 372, 88th Cong., 1st Sess. 5 (1963); see S.Rep. No. 114, 89th Cong., 1st Sess. 6 (1965). The primary example of such a tax was a withholding tax collected by an employer from his employees, but the Treasury Department also noted its objection to discharge of “excise taxes” that the debtor had collected from others. S.Rep. No. 114, supra, at 10 (reprinting letter from Assistant Secretary of Treasury to Chairman of Senate Judiciary Committee). This history strongly suggests that Congress did not intend to limit the section 17a(l)(e) exception to withholding taxes. Rather, taxes that “employers and other persons ... have collected ... from third parties” were trust fund taxes for which a bankruptcy discharge was not available. H.R.Rep. No. 372, supra, at 6 (reprinting letter from Assistant Secretary of Treasury to Chairman of House Judiciary Committee) (emphasis added); see S.Rep. No. 114, supra, at 10. Courts construing section 17a(l)(e) applied it to a sales tax that sellers were obligated to collect from buyers. In re Fox, 609 F.2d 178, 181 (5th Cir.), cert. denied, 449 U.S. 821, 101 S.Ct. 78, 66 L.Ed.2d 23 (1980).
Turning to the history of the provisions of the Code that we must construe in this case, we note that the House and Senate *435 each drafted versions of section 507. The two versions differed significantly in their treatment of trust fund and excise taxes. Under the House bill, the trust fund tax provision covered only “taxes required to be withheld from wages, salaries, commissions, dividends, interest, or other payments that were paid by the debtor.” H.R. 8200, 95th Cong., 1st Sess. § 507(6)(C) (1977), reprinted in App. 3 Collier on Bankruptcy (15th ed. 1985). The House bill also had a provision covering “excise taxes.” Id. § 507(6)(E). Under the House version, a discharge was not available for withholding taxes that became due within two years preceding bankruptcy or for excise taxes on transactions occurring within one year of bankruptcy. The Senate bill, on the other hand, included a trust fund tax provision not limited to withholding taxes. Rather, the Senate bill contained a provision, similar to section 17a(l)(e), that excepted from discharge a tax “required to be collected or withheld” no matter how stale the debt. S. 2266, 95th Cong., 2d Sess. § 507(a)(6)(C) (1978), reprinted in App. 3 Collier on Bankruptcy, supra. The Senate bill had no provision explicitly covering excise taxes.
The section ultimately enacted into law contained the Senate’s version of the trust fund tax provision and the House’s version of the excise tax provision (though changing the time limitation on nondischargeable excise taxes from one to three years). The statutory language does not resolve the issue before us; it simply provides both sides with a plausible argument. The debtors contend that the excise tax provision governs their debt because encyclopedias and dictionaries define a sales tax as an excise, see, e.g., 68 Am.Jur.2d Sales and Use Taxes § 4 (1973). The Commission responds that the language of the trust fund tax provision plainly covers the sales taxes the debtors owe to the State.
The statutory language plainly creates an overlap between the provisions for trust fund and excise taxes.[4] Obviously the overlap must be resolved since the two provisions lead to conflicting consequences. There are two possibilities. Congress may have intended to differentiate between two categories of excise taxes: those not collected from third parties, which are dis-chargeable if stale, and those collected from third parties, which are not discharge-able. Alternatively, Congress may have intended to differentiate between two categories of trust fund taxes: those that are also sales taxes and hence dischargeable if stale, and all other taxes collected from third parties, which are not dischargeable.[5]
Our reading of the legislative history persuades us that the overlap between these provisions must be resolved by holding that Congress intended to differentiate between two categories of excise taxes and that the trust fund tax provision excepts from discharge those excise taxes required to be collected from third parties. In re Rosenow, supra; contra In re Boyd, 25 B.R. 1003 (Bankr.S.D.Ohio 1982); In re Tapp, 16 B.R. 315 (Bankr.D.Ala.1981). First, we find nothing to indicate that Congress intended to change the policy reflected in prior law concerning sales taxes collected from others. We also note that, in proposing its version of the trust fund tax provision, the Senate intended to include in the trust fund category excise taxes that “a seller of goods or services is required to collect from a buyer and pay over to a taxing authority.” S.Rep. No. 989, 95th Cong., 2d Sess. 71 (1978) (report of Senate Judiciary Committee), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, *436 5857; see S.Rep. No. 1106, 95th Cong., 2d Sess. 15-16 (1978) (report of Senate Finance Committee). This history is persuasive since the compromise version rejected the House’s limited trust fund tax provision in favor of the Senate’s broader language. Admittedly, some remarks made in floor debate on the compromise lend support to the debtors’ position: “All Federal, State or local taxes generally considered or expressly treated as excises ..., including sales taxes ...” are dischargeable under the excise provision. 124 Cong. Rec. 34016 (1978) (remarks of Senator De-Concini, Senate subcommittee chairman), reprinted in 1978 U.S.Code Cong. & Ad. News 6505, 6567; 124 Cong.Rec. 32416 (1978) (remarks of Representative Edwards, House subcommittee chairman), reprinted in 1978 U.S.Code Cong. & Ad. News 6436, 6498. In view of the entire history of the trust fund tax provision, however, we do not believe that these remarks provide a sufficient basis for holding that the excise tax provision was intended to carve out an exception to the trust fund tax provision. A debt for a “trust fund sales tax” is not released by a bankruptcy discharge.
The judgment of the District Court is affirmed.

. Sections 507(a)(6)(C) and 507(a)(6)(E) provide:
(a) The following expenses and claims have priority in the following order:
(6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for—
(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;
(E) an excise tax on—
(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition____
11 U.S.C. § 507(a)(6)(C), (E). A recent amendment to the Code adding a new priority caused section 507(a)(6) to be renumbered to 507(a)(7). Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 350(2), 98 Stat. 333, 358. Since the original version governs resolution of this case, this opinion refers to section 507(a)(6) as it was in effect prior to the 1984 amendment.

. The legislative history of the Code explains that, in order to aid the debtor’s financial rehabilitation, the Code “retains the coordination between the priority and discharge provisions" reflected in the Act. H.R.Rep. No. 595, 95th Cong., 2d Sess. 190, reprinted, in 1978 U.S.Code Cong. & Ad.News 5787, 6151. Thus, Congress has "grant[ed] the nondischargeable tax a priority” so that “more of it will be paid in the bankruptcy case, leaving less of a debt for the debtor after the case." Id. The Code has changed the mechanism for accomplishing the rehabilitative objective of the Act. The Act defined certain categories of nondischargeable tax debts and then granted those debts a priority, see Bankruptcy Act of 1898, ch. 541, §§ 17a(l)(e), 64a, 30 Stat. 544, 550, 563 (formerly codified as amended at 11 U.S.C. §§ 35(a)(1), 104(a)(4)); the Code defines tax claims granted a priority and then excepts those claims from discharge, see 11 U.S.C. §§ 507(a)(6), 523(a)(1)(A). In the interest of brevity, we discuss bankruptcy treatment of tax debts only in terms of whether they are dischargeable, and, within those terms, we include the "coordinated” priority treatment.

. The 1966 amendment also excepted from discharge taxes that were not assessed because the debtor failed to file a tax return and taxes with respect to which the debtor filed a false return or otherwise attempted to evade.

. As the Seventh Circuit explained in In re Rosenow, 715 F.2d 277 (7th Cir.1983), the overlap occurs because there are two types of sales tax liabilities: "those which are owed personally by a debtor, for example, on purchases he himself has made, and those incurred by a retailer’s customers, which are collected by the retailer under the authority of the state and then owed by the retailer to the state.” Id. at 280.

. Since sales taxes collected from third parties are not refundable to them, but other taxes collected from third parties, such as withholding taxes, may be subject to a refund, a distinction between trust fund taxes is a plausible interpretation. However, we find nothing in the legislative history to support such a distinction. It seems much more likely that Congress wanted liability for all trust fund taxes to survive bankruptcy.