TANG, Circuit Judge:
The Washington Department of Revenue appeals from the judgment of the district court that debtor’s sales tax liability is an excise tax for purposes of the Code and is dischargeable in bankruptcy. The narrow issue on appeal is whether liability for a sales tax, required by state law to be collected by sellers from their customers, is governed by the “trust fund” tax or “excise” tax provisions of the Bankruptcy Code. We reverse.
The Code provisions in question are section 507(a)(6)(C), which covers a tax “required to be collected,” commonly referred to as a “trust fund” tax, and section 507(a)(6)(E), which covers an “excise” tax.[1]
A trust fund tax is always given a priority and is never subject, to discharge in bankruptcy. 11 U.S.C. §§ 507(a)(6)(C), 523(a)(1)(A). An excise tax, however, is given a priority and is not subject to discharge if the transaction occasioning the tax occurred less than three years prior to the filing of the bankruptcy petition. 11 U.S.C. §§ 507(a)(6)(E), 523(a)(1)(A). Consequently, “stale” claims for excise taxes are not entitled to a priority and are discharge-able.
Darrel Shank (debtor) operated a retail establishment in the State of Washington. As a retailer, debtor was required by Washington law to collect sales tax on all retail sales and forward the collected funds to the Washington Department of Revenue (Department). RCW 82.08.050 (1981). Debtor failed to forward the collected funds. When the business was discontinued in 1979, debtor’s total liability for sales taxes was in excess of $45,000. Debtor soon left the state. After filing for bankruptcy in 1984, debtor instituted an adversary proceeding against the Department seeking a determination that the sales tax debt to the State was dischargeable.
*831 The bankruptcy court granted summary judgment in favor of the Department. The bankruptcy court, primarily relying on In re Rosenow, 715 F.2d 277 (7th Cir.1983), concluded that Congress intended collected sales tax to be characterized as a trust fund tax and was thus excepted from discharge under 11 U.S.C. §§ 507(a)(6)(C) and 523(a)(1)(A).
The district court reversed the judgment of the bankruptcy court. The district court examined the joint explanatory statement by the House and Senate floor managers of § 507 and concluded that all sales taxes owed by the sellers, including those collected by sellers and held in trust, were intended by Congress to be characterized as excise taxes and dischargeable under § 507(a)(6)(E). The Department timely appeals.
DISCUSSION
The district court’s conclusions of law are reviewed de novo. In re Global Western Development Corp., 759 F.2d 724 (9th Cir.1985). Because the material facts are uncontested, the only issue is how to construe the applicable provisions of the Bankruptcy Code.
In its 1966 amendment to the Bankruptcy Act, Congress placed a time limitation on the non-dischargeability of tax debts. Most tax debts more than three years old became dischargeable. Act of July 5, 1966, Pub.L. No. 89-496 § 2, 80 Stat. 270. However, a proviso added by the 1966 Amendment identified certain tax debts that remained non-dischargeable even though the tax debt was more than three years old. One such debt was a trust-fund tax. Act, § 17(a)(1)(e).
Section 17(a)(1)(e) excepted from discharge taxes the debtor “has collected or withheld from others.” Although this language did not expressly refer to sales taxes, the legislative history strongly suggests that Congress did not intend to limit the § 17(a)(1)(e) exception to withholding taxes. DeCkiaro v. New York State Tax Comm’n, 760 F.2d 432, 434 (2d Cir.1985). The indication was, in fact, that the 17(a)(1)(e) exception was intended to extend to sales taxes a vendor has collected from his customers. Id. Courts construing 17(a)(1)(e) applied it to a sales tax that sellers were obligated to collect from buyers. See, e.g., In re Fox, 609 F.2d 178, 181 (5th Cir.), cert. denied, 449 U.S. 821, 101 S.Ct. 78, 66 L.Ed.2d 23 (1980).
With the 1966 amendments to the Act in mind, we turn to the legislative history of the 1978 enactments of sections in issue.
The House and Senate versions of § 507 were markedly different. See In re Monaco, 47 B.R. 602, 610-13 (Bankr.W.D.N.Y.1985), reversed, Kelly v. New York State Dep't of Tax., 61 B.R. 674 (W.D.N.Y.1985) (remanded to conform with DeCkiaro). Section 507 resulted from a compromise between the floor leaders of the bill: Congressman Edwards and Senator DeConcini. Id. at 608. The House version of subsection (C) encompassed only “taxes to be withheld from wages, salaries, commissions, dividends, interest, or other payments that were paid by the debtor ...” Monaco, 47 B.R. at 611; see also H.R. No. 595, 95 Cong., 1st Sess. 357-58 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787, reprinted in A. Herzog & L. King, Collier Pamphlet Edition, Bankruptcy Code, § 507 at 240 (1985).
The Senate’s version of subsection (C) was virtually identical to the enacted provision. It included “tax required to be collected or withheld from others and for which the debtor is liable in any capacity ...” Monaco, 47 B.R. at 611. The Senate Report stated:
This category covers the so-called “trust fund” taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, the employees’ shares of social security and railroad retirement taxes, and also Federal Unemployment Insurance. This category also includes excise taxes which a seller of goods or services is required to collect from a buyer and pay over to a taxing authority.
*832 S.Rep. No. 989, 95th Cong., 2d Sess. 68-73 (1978), U.S.Code Cong. & Admin.News 1978, p. 5857, reprinted in, A. Herzog & L. King, supra, § 507 at 243 (emphasis added).
The compromise enacted of § 507 adopted the Senate’s version of subsection (C). It was accompanied by the Joint Statement of Edwards and DeConcini:
Taxes which the debtor was required by law to withhold or collect from others and for which he is liable in any capacity, regardless of the age of the tax claims. This category covers the so-called “trust fund” taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, and the employees’ share of social security taxes.
124 Cong.Rec. 32,416 (1978), reprinted in A. Herzog & L. King, supra, § 507 at 248-49. We recognize that the reference to collected excise taxes in the Senate Report was, intentionally or unintentionally, deleted from the Joint Statement.
The House version of subsection (E) was essentially the same as the enacted version, with one difference: excise tax debts were dischargeable if older than one year, instead of three years. The House Report does not elaborate on what the term “excise tax” would encompass. H.Rep. No. 595, 95th Cong., 1st Sess. 357-58 (1977), reprinted in A. Herzog & L. King, supra, § 507 at 240.
The joint statement of Edwards and De-Concini defines excise taxes as including the following:
All Federal, State or local taxes generally considered by this category, including sales tax, estate and gift tax, gasoline and special fuel taxes, and wagering and truck taxes.
124 Cong.Rec. 32,416 (1978), reprinted in A. Herzog & L. King, supra, § 507 at 250.
As the DeChiaro court recognized, the statutory language creates an overlap between the provisions for trust fund and excise taxes:
Congress may have intended to differentiate between two categories of excise taxes: those not collected from third parties, which are dischargeable if stale, and those collected from third parties, which are not dischargeable. Alternatively, Congress may have intended to differentiate between two categories of trust fund taxes: those that are also sales taxes and hence dischargeable if stale, and all other taxes collected from third parties, which are not dischargeable.
760 F.2d at 435.
We believe that Congress intended to retain the distinction between the two forms of sales tax liability: those owed personally by a retailer and those incurred by a retailer’s customers which are collected by the retailer under the authority of the state, held in trust, and then remitted by the retailer to the state. We find no indication that Congress intended to treat retailers differently than employers, who clearly cannot discharge their liability for withheld income taxes. Rosenow, 715 F.2d at 280.
This interpretation is supported by important public policy considerations. A failing retailer should not be given incentive to default on sales tax obligations. If the obligation to the taxing authority can be discharged by a bankruptcy filing three years after the transaction giving rise to the tax, such an incentive to default will exist. For these reasons, we hold that Congress intended to differentiate between two categories of excise taxes and that the trust fund tax provision excepts from discharge those excise taxes required to be collected from third parties. DeChiaro, 760 F.2d at 435; Rosenow, 715 F.2d at 280; Contra In re Boyd, 25 B.R. 1003 (Bankr.S.D.Ohio 1982); In re Tapp, 16 B.R. 315 (Bankr.D.Alaska 1981)0.
The dissent places emphasis on the fact that the Senate Report of § 507(a)(6)(C) specifically mentioned excise taxes collected by retailers from third parties, but that the Joint Statement that accompanies the compromise subsection did not contain similar language. Since the Senate’s version of subsection (C) was adopted, the dissent infers that Congress intended to character *833 ize third-party-collected sales taxes as excise taxes rather than as trust fund taxes.
This theory is plausible, but strained. We do not believe that without more the intentional or unintentional deletion in the Joint Statement of the Senate Report’s reference to collected excise taxes signals Congress’ intent to perform what would be a significant about-face in its treatment of sales taxes collected from third parties.
In view of the entire history of the trust fund tax provision, we hold that a debt for a “trust fund sales tax” is not released by a bankruptcy discharge.
The judgment of the district court is REVERSED.

. Sections 507(a)(6)(C) and 507(a)(6)(E) provide:
(а) The following expenses and claims have priority in the following order:
******
(б) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for—
******
(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;
******
(E) an excise tax on—
(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition. ...
11 U.S.C. § 507(a)(6)(C)(E).
The recent amendment to the Code adding a new priority caused Section 507(a)(6) to be renumbered 507(a)(7). Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 350(2), 98 Stat. 333, 358. Since the original version governs resolution of this case, this opinion refers to § 507(a)(6) as it was in effect prior to the 1984 amendment.